IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE CRAWFORD,                         No. C 16-1301 CW

          Plaintiff,                     ORDER ON MOTION TO
                                         STRIKE AND MOTION
     v.                                  TO FILE UNDER SEAL

CITY AND COUNTY OF SAN FRANCISCO,        (Docket Nos. 13 &
et al.,                                  18)

          Defendants.

════════════════════════════/

     Defendant City and County of San Francisco[1] filed a motion to
strike Plaintiff Willie Crawford's state law causes of action
under California's anti-SLAPP statute, California Code of Civil
Procedure section 425.16.  As explained below, the Court grants
the motion in part and denies it in part.

                         BACKGROUND

I.   Factual Background

     Crawford, an African-American man, has worked for the San
Francisco Department of Public Health for thirty years.  He has
been a Facilities Manager since approximately 2002.

     Crawford's Second Amended Complaint (2AC) describes a pattern
of discrimination culminating in a biased investigation.  Crawford
alleges that he outperforms his current classification, but was
denied a classification elevation on April 23, 2015.  Crawford
also alleges that Department personnel spread untrue rumors about

---

     [1] Other Defendants included in the original Complaint and the
First Amended Complaint were not included in the Second Amended
Complaint.

him, which the City failed to stop.  In particular, it is rumored that he "has a temper," and that people "should be careful if they ever see" his son, a "gangster rapper."  2AC ¶¶ 12-15.  Most recently, on January 26, 2016, Crawford's attorney received an email stating that there was a rumor in the Department that Crawford had passed away.

Next, Crawford describes several problematic elements of the City's investigation.  The investigation began in late August 2015, after Crawford had filed the original complaint in this case.[2]  Crawford alleges that the "true purpose . . . was to manufacture reasons for firing" him.  Id. ¶ 18.  Crawford alleges that the City Attorney investigator's witness summaries were broad and biased.  He also alleges that the investigator "questioned witnesses while his tape-recorder was turned off; telling witnesses what he wanted them to talk about."  Id. ¶ 20.  Crawford states that the witness statement production to him was incomplete; at least two witnesses whose statements were missing from the production said positive things about Crawford.  Later,

---

[2] The City argues that it began the investigation when Stephanie Aquino, an employee whom Plaintiff previously supervised, filed complaints with the Controller's Office and the Department of Human Resources dated August 17 and 25, 2015, respectively.  The motion to file these documents under seal (Docket No. 18) is GRANTED.  See San Francisco Campaign and Governmental Conduct Code § 4.123(a)(ii) (stating that the City shall keep confidential "[c]omplaints or reports to the Whistleblower Program and information related to the investigation of the matter"); Docket No. 18-1, Dec. of Willie Ramirez ¶ 5 (declaring as the Department of Public Health's Labor Relations Director that it is his understanding that workplace complaints are not released to the general public).  The motion is also GRANTED as to the resulting Controller's Office report.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

on or about October 9, 2015, Crawford was placed on paid administrative leave for misconduct, but was not given any specifics on the alleged misconduct.

On December 1, 2015, the Director of Human Resources notified Crawford that he was to report for an interview with the investigator on December 8th.[3]  Id. ¶ 23.  On December 2, Crawford's then-attorney stated that he was not available on December 8, but offered two alternative dates.  Id. ¶ 24.  The Director responded that the investigators were available on the 7th, that the interview could not take place later than the 7th, and that the interview would take place on the 7th.  Id.  Crawford then agreed to the 8th even though his attorney could not attend. Crawford's attorney argued that it would be unethical to proceed in the absence of an attorney in light of this pending lawsuit, to no avail.

Crawford arrived at the interview to find that there was a court reporter, although he had not been notified of this. Crawford alleges that the scope of the questioning "clearly showed that there was nothing specific.  This was a fishing expedition designed to uncover some kind of misconduct or impropriety."  Id. ¶ 27.  There were many questions about Crawford's assets and financial situation, including the financial situation of his nephew who lives in China.  In January 2016, Crawford's attorney filed a motion to disqualify the City Attorney from representing

---

[3] Paragraph 23 states that the interview was originally planned for the 4th, but Paragraph 24 describes the 8th as the date "that was initially offered."

Defendants.   The City Attorney voluntarily withdrew without filing an opposition.

The 2AC contains other allegations that do not relate to the investigation of Crawford.  Although Crawford was granted medical leave from December 9, 2015 through February 29, 2016, the City served him with a notice of intent to dismiss and notice of a Skelly[4] hearing to be conducted in early January 2016.  This hearing occurred as scheduled without Crawford, in spite of Crawford's attorney's objections.  Id. ¶ 32.  The main participants were allegedly "tainted by bias."  Id. ¶ 33.

Further, the Human Resources Director allegedly "took the extraordinary step of intervening and protecting" certain employees whom Crawford supervised and whom Crawford was planning on disciplining.  Id. ¶¶ 36-38.  Crawford also cites the City's investigation of a man who made the following statement about Crawford: "I wish he was dead, I hate this guy."  Id. ¶ 40.  In that investigation, the City interviewed Crawford first, even though he had not heard the comment, and then did not discipline the man who made the statement.

---

[4] Skelly v. State Pers. Bd., 15 Cal. 3d 194, 215 (1975), holds that "the taking of punitive action against a permanent civil service employee" must fulfill certain due process requirements, including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond."  The notice of intent to dismiss sent to Crawford on December 18, 2015 stated that evidence supported that he made statements that threatened bodily harm, engaged in a controlling, intimidating and fearful pattern of practice, misused City resources and was untruthful in the course of his interview.  Dec. of Willie Ramirez at Ex. B.

United States District Court
For the Northern District of California

Finally, Crawford cites two incidents that he also attributes to the alleged discrimination and harassment against him.  In November 2014, Crawford discovered he had not been paid his salary, which the Human Resources Director attributed to a "payroll glitch" although it did not impact anyone else's salary. Id. ¶¶ 43-44.  Additionally, three months of Crawford's emails were deleted from the department servers but had been sent to "one Arlena Winn, purportedly by him."  Thus, he claims, his emails are "being read by others and forwarded to others."  Id. ¶¶ 45-46.

II.  Procedural History

In 2012, Crawford filed an official complaint with the California Department of Fair Employment and Housing (DFEH) alleging racial discrimination; in 2014, he amended the complaint to include harassment and retaliation.  The DFEH issued him a right to sue letter.

On March 3, 2015, Crawford filed a complaint in San Francisco Superior Court.[5]  At that point, he alleged only state law claims. The City answered his subsequent 2AC and removed the action to federal court because it contains a federal Family Medical Leave Act claim.  The 2AC also contains five state law claims, including discrimination, harassment and retaliation claims under California's Fair Employment and Housing Act, an intentional infliction of emotional distress claim, and a claim for wrongful termination in violation of public policy.

//

---

[5] The Court takes judicial notice of the state court complaints.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Docket No. 21.

United States District Court
For the Northern District of California

DISCUSSION

California's anti-SLAPP statute provides,

> A cause of action against a person arising from any act of
> that person in furtherance of the person's right of petition
> or free speech under the United States Constitution or the
> California Constitution in connection with a public issue
> shall be subject to a special motion to strike, unless the
> court determines that the plaintiff has established that
> there is a probability that the plaintiff will prevail on the
> claim.

Cal. Civ. Proc. Code § 425.16(b)(1).  California anti-SLAPP
motions to strike are available to litigants proceeding in federal
court.  Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206 (9th
Cir. 2005).

Courts analyze these motions in two steps.  "First, the
defendant must make a prima facie showing that the plaintiff's
suit arises from an act in furtherance of the defendant's rights
of petition or free speech."  Mindys Cosmetics, Inc. v. Dakar, 611
F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation
marks omitted).  "Second, once the defendant has made a prima
facie showing, the burden shifts to the plaintiff to demonstrate a
probability of prevailing on the challenged claims."  Id.

"At [the] second step of the anti-SLAPP inquiry, the required
probability that [a party] will prevail need not be high."  Hilton
v. Hallmark Cards, 599 F.3d 894, 908 (9th Cir. 2009).  A plaintiff
must show "only a 'minimum level of legal sufficiency and
triability.'"  Mindys, 611 F.3d at 598 (quoting Linder v. Thrifty
Oil Co., 23 Cal. 4th 429, 438 n.5 (2000)).  The plaintiff need
only "state and substantiate a legally sufficient claim."  Id. at
598-99 (citation and internal quotation marks omitted).  In
conducting its analysis, the "court 'does not weigh the

credibility or comparative probative strength of competing evidence,' but 'should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'"   Id. at 599 (quoting Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 821 (2002)).   At this stage, the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."   Id. at 598 (quoting Cal. Civ. Proc. Code § 425.16(b)(2)).

I.   Protected Activity

Under the anti-SLAPP statute, the phrase "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . .

Cal. Civ. Proc. Code § 425.16(e).   Written or oral statements "preparatory to or in anticipation of the bringing of an official proceeding are within the protection of section 425.16."   Hansen v. Cal. Dep't of Corr. & Rehab., 171 Cal. App. 4th 1537, 1544 (2008).   This category includes communications seeking official investigations.   Salma v. Capon, 161 Cal. App. 4th 1275, 1286 (2008).

An internal proceeding may constitute an "official proceeding."   Hansen, 171 Cal. App. 4th at 1544.   Specifically, a

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

city's investigation into an employee's conduct and its
determination that he had engaged in misconduct on the job may
satisfy the first prong of section 425.16.  See <u>Miller v. City of
L.A.</u>, 169 Cal. App. 4th 1373, 1383 (2008).

Here, many of Crawford's allegations relate to statements
made in connection with an official proceeding authorized by law.
For example, under the Charter of the City and County of San
Francisco, the Civil Service Commission adopted a policy on
workplace safety requiring investigation of "any reported
incidents of threats or acts of violence by any employees."
Docket No. 16-1, Request for Judicial Notice Ex. A.[6]  The City's
investigation of the co-worker who wished he were dead falls under
this umbrella.  Similarly, statements connected to the City's
investigation of Crawford's acts constitute protected activity.

Further, the Charter grants the City Controller authority to
receive complaints concerning "misuse of City government funds,
and improper activities by City government officers and
employees."  <u>Id.</u> Ex. E, Charter § F1.107.  It also requires the
Controller to refer complaints that may constitute violations of
criminal law to the District Attorney and violations of
governmental ethics laws to the Ethics Commission and the City
Attorney.  <u>Id.</u>  The Controller must "investigate and otherwise

---

[6] The Court grants the City's request for judicial notice of
all attachments filed in Docket Number 16.  See <u>Tollis, Inc. v.
Cty. of San Diego</u>, 505 F.3d 935, 938 n.1 (9th Cir. 2007) (granting
judicial notice of municipal ordinances); <u>Az. Libertarian Party v.
Reagan</u>, 798 F.3d 723, 727 n.3 (9th Cir. 2015), <u>cert. denied</u>, 136
S. Ct. 823 (2016) (taking judicial notice of "information posted
on a governmental website" where its accuracy was undisputed).

United States District Court
For the Northern District of California

attempt to resolve such individual complaints," with exceptions
not applicable here.  Id.  According to the City, the
investigation of Crawford was a "legally-required investigation of
a whistleblower allegation against Crawford, regarding abuse of
authority and misuse of City resources."  Docket No. 13, Opening
Br. at 10.

In addition, the Charter directs that the Human Resources
Director "shall review and resolve allegations of discrimination"
and "shall investigate all employee complaints concerning job-
related conduct of City and County employees."  Charter § 10.103.
The City argues that it followed these procedures in response to
Crawford's discrimination complaints.  The City's investigation
into Crawford's and Aquino's complaints constitutes the City's
protected activity.

Crawford argues that the investigation of him is not
protected because it was unlawful or done for an unlawful purpose.
He argues that it was a pretext for retaliation.  He claims that
the alleged unlawfulness of the investigation removes his
allegations from the ambit of an anti-SLAPP motion.  However, the
California Supreme Court has concluded that an activity's alleged
unlawfulness renders the activity unprotected where "either the
defendant concedes, or the evidence conclusively establishes, that
the assertedly protected speech or petition activity was illegal
as a matter of law."  Flatley v. Mauro, 39 Cal. 4th 299, 320
(2006).  As the Ninth Circuit has clarified, California courts
have concluded that defendants may show that activity is protected
"even when their conduct was allegedly unlawful."  Doe v. Gangland
Prods., Inc., 730 F.3d 946, 954 (9th Cir. 2013).  Flatley presents

**United States District Court**
For the Northern District of California

an "exception" to that rule.  Id. n.2  Here, the City has not
conceded that the investigation was illegal, and the Court cannot
conclude as a matter of law that it was.

Notably, several of Crawford's allegations regarding the
City's actions do not constitute protected activity, including the
City's failure to elevate his classification, the failure to stop
rumors spread about him and his son, the "payroll glitch," the
deletion of his emails and the transfer of employees he
supervised.  The Court must decide whether the causes of actions
at issue are "mixed" and therefore subject to anti-SLAPP
protection, or based on so few protected allegations that the
causes of action are not protected.  "A mixed cause of action is
subject to section 425.16 if at least one of the underlying acts
is protected conduct, unless the allegations of protected conduct
are merely incidental to the unprotected activity."  Salma, 161
Cal. App. 4th at 1287.  Here, the allegations related to official
investigations authorized under law are not "merely incidental" to
the other allegations at issue.  Thus, the allegations satisfy the
first step of the anti-SLAPP inquiry; they comprise mixed causes
of action and are subject to protection.

II.  Probability of success

There are two main approaches to the second step on mixed
causes of action.  Under the first approach, "if any part of a
mixed cause of action satisfies the second prong of anti-SLAPP,
the entire cause of action continues."  Liberi v. Taitz, 2016 WL
1382398, at *1 n.2 (9th Cir.) (following Wallace v. McCubbin, 196
Cal. App. 4th 1169, 1212 (2011)); see also Haight Ashbury Free
Clinics, Inc. v. Happening House Ventures, 184 Cal. App. 4th 1539,

10

United States District Court
For the Northern District of California

1554 (2010); Burrill v. Nair, 217 Cal. App. 4th 357, 382 (2013).

That is, if the plaintiff has a probability of success on either

the allegations of protected activity or the allegations of

unprotected activity, the entire cause of action continues.  Under

the second approach, where a plaintiff has established a

probability of prevailing on allegations of unprotected activity

but not on allegations of protected activity, the protected

activity allegations may be parsed from the causes of action and

stricken, while the allegations related to unprotected activity

may remain part of the complaint.  See City of Colton v.

Singletary, 206 Cal. App. 4th 751, 774 (2012); Cho v. Chang, 219

Cal. App. 4th 521, 527 (2013).  Although the California Supreme

Court is expected to answer this question within the next few

months,[7] the Court follows the first approach in an abundance of

caution.

The City argues that, due to California's litigation

privilege, Crawford's state law claims have no probability of

prevailing and thus cannot meet the second prong of the anti-SLAPP

test.  See Flatley, 39 Cal. 4th at 323 ("The litigation privilege

. . . may present a substantive defense a plaintiff must overcome

to demonstrate a probability of prevailing.").  A publication or

broadcast made "in any . . . official proceeding authorized by

law" is privileged.  Cal. Civ. Code § 47(b).  The privilege

"grants absolute immunity from tort liability."  Flatley, 39 Cal.

4th at 324; see also Ribas v. Clark, 38 Cal. 3d 355, 364 (1985)

---

[7]Oral argument in Baral v. Schnitt, Case No. S225090, was heard on May 5, 2016.

**United States District Court**
For the Northern District of California

(applying the privilege to statutory causes of action).  Although
the litigation privilege is similar to the description of
protected activity in the anti-SLAPP statute, the two are not
coterminous in all respects.  See Flatley, 39 Cal. 4th at 320-25.
Rather, the privilege applies to communications made (1) in
judicial or quasi-judicial proceedings; (2) by litigants or other
participants authorized by law; (3) to achieve objects of the
litigation; and (4) that have some connection or logical relation
to the action.  Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990);
Feldman v. 1100 Park Lane Assocs., 160 Cal. App. 4th 1467, 1485
(2008).

Here, the statements made in connection with the protected
investigation are subject to the litigation privilege.  The
litigation privilege encompasses "a communication concerning
possible wrongdoing, made to an official governmental agency . . .
and which communication is designed to prompt action by that
entity."  Williams v. Taylor, 129 Cal. App. 3d 745, 753 (1982).
It also encompasses statements made in or about many different
types of governmental investigations.  Braun v. Bureau of State
Audits, 67 Cal. App. 4th 1382, 1389 (1998) (collecting cases).
Further, the privilege is not limited to statements made during
the proceeding, but may extend to steps taken prior to or after
the proceeding.  Feldman, 160 Cal. App. 4th at 1485.  Therefore,
the City cannot be held liable based on statements made to
initiate proceedings, statements within the proceedings,
statements regarding the proceedings or statements that are the
result of the proceedings unless an exception applies.  Notably,
non-communicative acts, such as the fact of an investigation or

United States District Court
For the Northern District of California

the fact of the appearance of a court reporter, would not fall under this privilege.

As explained above, many of Crawford's allegations fall outside of official proceedings.  The Court examines each claim for viability, without considering the allegations of communications that are subject to the litigation privilege.

a. Racial discrimination (FEHA)

The City argues that Crawford's racial discrimination claim should be stricken.  In employment discrimination cases, courts typically use the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).  Although this framework was originally created to evaluate Title VII claims, California courts have since adopted it to analyze FEHA claims, as well.  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000); Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).  The plaintiff must generally provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action and (4) some other circumstance suggests discriminatory motive.  Guz, 24 Cal. 4th at 355.

The allegations in the 2AC are insufficient to suggest a discriminatory motive.  While the rumor that people should be careful of Crawford because his son was a rapper could be considered racially charged, Crawford does not allege that the City knew of this rumor.  There is no inference of race discrimination to be drawn from the City's failure to discipline

**United States District Court**
For the Northern District of California

Crawford's co-worker following an investigation into a report that
he wished Crawford were dead.  The Court GRANTS the City's motion
on this claim, with leave to amend.  <u>Cf.</u> <u>Verizon Del., Inc. v.</u>
<u>Covad Commc'ns Co.</u>, 377 F.3d 1081, 1091 (9th Cir. 2004) ("granting
a defendant's anti-SLAPP motion to strike a plaintiff's initial
complaint without granting the plaintiff leave to amend would
directly collide with Fed. R. Civ. P. 15(a)'s policy favoring
liberal amendment").

      b. Harassment (FEHA)

To evaluate a plaintiff's claims of racial harassment under
FEHA, California courts rely on federal case law interpreting
Title VII.  <u>Etter v. Veriflo</u>, 67 Cal. App. 4th 457, 464 (1998).
Crawford must prove that (1) he was subjected to verbal or
physical conduct related to his membership in a protected class;
(2) the conduct was unwelcome; and (3) the conduct was
sufficiently severe or pervasive to alter the conditions of his
employment and create an abusive work environment.  <u>Vasquez v.</u>
<u>Cty. of L.A.</u>, 349 F.3d 634, 642 (9th Cir. 2003) (citing <u>Gregory v.</u>
<u>Widnall</u>, 153 F.3d 1071, 1074 (9th Cir. 1998)).

This claim qualifies for anti-SLAPP protection at the first
step because Crawford alleges that the City's investigation of him
constituted racial harassment.  But again, the only allegations
related to Crawford's race pertain to failure to stop rumors that
his son was a rapper.  This alleged conduct is not sufficiently
severe or pervasive to alter the conditions of employment and
create an abusive environment.  Thus, no part of the claim is
triable.  The Court GRANTS the City's motion to strike Crawford's
harassment claim, with leave to amend.

**United States District Court**
For the Northern District of California

c. Retaliation (FEHA)

It is unlawful for "any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint . . . ." Cal. Gov. Code § 12940(h). Claims for retaliation under FEHA are analyzed under the burden-shifting framework established in McDonnell Douglas, 411 U.S. 792. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). To establish a prima facie case of retaliation, a plaintiff must "show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Id. at 1042. Once a plaintiff establishes a prima facie case, a presumption of retaliatory intent arises. See id. To overcome this presumption, the defendant must come forward with a legitimate, non-retaliatory reason for the employment decision. Id. If the defendant provides that explanation, the presumption disappears and the plaintiff must demonstrate that the defendant acted with retaliatory intent. See id.

Here, the 2AC states that filing formal complaints and filing this lawsuit constitute Crawford's protected activity. Allegations that the City retaliated against Crawford by pursuing the investigation against him squarely implicate anti-SLAPP protection. The litigation privilege applies to the allegedly retaliatory investigation and report. See Gallanis-Politis v. Medina, 152 Cal. App. 4th 600, 617 (2007). However, the privilege

**United States District Court**
For the Northern District of California

1    would not protect the City from suit based on an allegedly

2    retaliatory termination if Crawford is fired.

3        Nonetheless, Crawford has demonstrated that his retaliation

4    claim is triable.  The City served Crawford with a <u>Skelly</u> notice

5    after he filed his lawsuit, which alone demonstrates a possibility

6    of success.  Further, the timing of the investigation demonstrates

7    possible retaliatory intent.  For these reasons, the Court DENIES

8    the City's motion to strike Crawford's retaliation claim.

9            d. Intentional Infliction of Emotional Distress

10       To state a claim for intentional infliction of emotional

11   distress, a plaintiff must allege (1) extreme or outrageous

12   conduct with intent to cause, or with reckless disregard for the

13   probability of causing, emotional distress, (2) that he actually

14   suffered severe emotional distress, and (3) actual and proximate

15   causation.  <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal. 4th 965,

16   1001 (1993).

17       To illustrate, "mere insult, indignity, annoyance, or even

18   threats, where the case is lacking in other circumstances of

19   aggravation" do not constitute extreme or outrageous conduct.

20   <u>Yurick v. Super. Ct.</u>, 209 Cal. App. 3d 1116, 1128 (1989).

21   Outrageous conduct is "that which is the most extremely

22   offensive."  <u>Id.</u> at 1129.  It cannot be said that Crawford's

23   allegations listed here, even including the protected activity,

24   constitute such extremely offensive conduct.  Therefore, the Court

25   STRIKES this cause of action, but grants leave to amend.

26   //

27   //

28   //

16

1      e. Wrongful Termination in Violation of Public Policy

2      California Government Code section 815 bars Tameny[8] actions

3 against public entities.  Miklosy v. Regents of Univ. of Cal., 44

4 Cal. 4th 876, 900 (2008); see also Anthoine v. N. Cent. Ctys.

5 Consortium, 605 F.3d 740, 754 (9th Cir. 2010) (same).  Because

6 Crawford conceded at oral argument that this claim is not viable,

7 the Court GRANTS the City's motion to strike this cause of action.

8                              CONCLUSION

9      For the foregoing reasons, the Court GRANTS the City's motion

10 to strike Crawford's claims of discrimination, harassment, and

11 intentional infliction of emotional distress, with leave to amend,

12 and dismisses his claim for wrongful termination without leave to

13 amend.  It DENIES the City's motion as to Crawford's claim of

14 retaliation (Docket No. 13).

15      The Court GRANTS the City's motion to file certain documents

16 under seal (Docket No. 18).

17      IT IS SO ORDERED.

18

19 Dated:  June 22, 2016

20                              CLAUDIA WILKEN
                               United States District Judge

21

22

23

24

25

26

27

28      [8] Tameny v. Atl. Richfield Co., 27 Cal. 3d 167 (1980).